UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

MARY R. CALDWELL, an individual,

       Plaintiff,

v.                             Civil Action No. 2:14-cv-25242

STANDARD INSURANCE COMPANY, an Oregon
Corporation, CHARLESTON AREA MEDICAL CENTER, INC.,
LONG TERM DISABILITY PLAN, an employee benefit plan,
and DOES 1 through 10, inclusive,

       Defendants.

## MEMORANDUM OPINION AND ORDER

       Pending is the motion to dismiss of defendant Standard Insurance Company ("Standard"), filed October 17, 2014, and joined by defendant Charleston Area Medical Center Long Term Disability Plan ("the Plan") by motion filed November 26, 2014.[1] For the reasons set forth below, the motion to dismiss is denied.

## Background

       Plaintiff Mary R. Caldwell ("Caldwell") is a citizen of West Virginia residing in Kanawha County, West Virginia.  Pl.

---

[1]The Plan, originally the subject of a cross-claim by Standard, is no longer adverse to Standard.  See Motion for Joinder (ECF 23).  Both defendants are now represented by the same counsel, and the Plan has moved to join Standard's motion to dismiss. The motion to join is hereby granted.

Compl. ¶ 1.  She was formerly an employee of Charleston Area Medical Center, Inc ("CAMC").  Id. ¶ 7.  CAMC, through the Plan, maintains a group long term disability insurance policy ("the policy") purchased from and administered by Standard.  Id. ¶ 6, ¶ 8; see also Pl. Compl. Ex. A ("LTD Policy").[2]  Throughout her term of employment, Caldwell was a qualified participant in the Plan under the terms of the policy.  Pl. Compl. ¶ 7.

On or about January 4, 2011, while an employee of CAMC, Caldwell became "totally disabled" and was rendered unable to work.  Id. ¶ 10.  On April 5, 2011 Caldwell began receiving long term disability benefits as provided for in the policy.  See Pl. Brief in Opp'n to Mot. to Dismiss, Attachment A, "September 23, 2013 Letter from Standard to Caldwell" (ECF 25-1)("You ceased working . . . on January 5, 2011, and claimed Disability . . . Your claim was approved with benefits payable April 5, 2011, after you served your 90 day Benefit Waiting Period and in accordance with the terms of the . . . Policy.").

The policy contains two separate definitions of disability: "own occupation" and "any occupation".  See LTD Policy at * 7.  The policy states that "you are Disabled if you

---

[2] Citations to "LTD Policy" refer to the full text of the Group Long Term Disability Policy, attached as Exhibit A to the complaint.  (ECF 1-1).  Pagination references are to the page numbers contained in the policy itself.

meet [one of the two] definitions during the periods they
apply." Id. The policy provides the following definition of
the term "own occupation":

> You are Disabled from your Own Occupation if, as a
> result of Physical Disease, Injury, Pregnancy or Mental
> Disorder:
>
> 1. You are unable to perform with reasonable continuity
>    the Material Duties of your Own Occupation; and
> 2. You suffer a loss of at least 20% in your Indexed
>    Predisability Earnings when working in your Own
>    Occupation.

Id. The policy also provides that the "Own Occupation Period"
is "the first 24 months for which LTD Benefits are paid." Id.
at * 1. Caldwell received, without issue, long term benefits
under the own occupation definition of disability for 24 months.
Id. ¶ 12.

        Near the end of that 24 month period, on March 28,
2013, Caldwell received a letter from Standard informing her
that she did not qualify for benefits under the policy's "all
occupations" definition of disability and that she was being
denied further benefits. Id. ¶ 13. The policy defines the term
"all occupations" as follows:

> You are Disabled from all occupations if, as a result of
> Physical Disease, Injury, Pregnancy or Mental Disorder,
> you are unable to perform with reasonable continuity the
> Material Duties of Any Occupation.
>
> Any Occupation means any occupation or employment which

> you are able to perform, whether due to education,
> training or experience, which is available at one or
> more locations in the national economy and in which you
> can be expected to earn at least 80% of your indexed
> Predisability Earnings within twelve months following
> your return to work, regardless of whether you are
> working in that or any other occupation.

LTD Policy at * 8.  The policy also provides that the "All

Occupation Period" lasts "[f]rom the end of the Own Occupation

Period to the end of the Maximum Benefit Period."  Id. at * 1.

Caldwell filed a timely internal appeal of the

determination that she did not qualify for benefits under the

all occupations definition.  Id. ¶ 14.  Standard denied that

appeal by a letter dated September 23, 2013.  Id. ¶ 15.

Caldwell filed an appeal of the September denial, also through

Standard's internal review process.  Id. ¶ 16.  Standard denied

that appeal by a letter dated December 5, 2013.  Id. ¶ 17.

Caldwell initiated this action by filing a complaint

on August 29, 2014.  The complaint alleges that Standard and the

Plan violated the Employee Retirement Income Security Act of

1974 ("ERISA"), 29 U.S.C. § 1001 et seq, by denying Caldwell

benefits to which she was entitled under the terms of the

policy.

Standard moved to dismiss, arguing that Caldwell's

complaint was filed outside the three-year contractual

4

limitation period set forth in the policy and is therefore time-barred. As noted, the Plan has joined that motion. In response, Caldwell asserts that her complaint was timely filed,[3] or, in the alternative, that the policy's limitation period is rendered unenforceable by W. Va. Code § 33-6-14.

This court has jurisdiction inasmuch as Caldwell's claim arises under ERISA, a federal statute. 28 U.S.C § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

## The Motion to Dismiss Standard

Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff's complaint to contain "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide

---

[3] Caldwell raised three arguments as to why her complaint should be considered timely filed even if the contractual limitation provision is enforceable. Because the court concludes that the provision is unenforceable, the merits of these arguments need not be addressed.

"'fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds, Twombly, 550 U.S. at 563); see also Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007). The showing of an "entitlement to relief" must amount to "more than labels and conclusions . . . ."  Twombly, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do."  Id.; Giarratano v. Johnson, 521 F.3d 298, 304 (4th Cir. 2008).

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570); see also Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009).  When evaluating a motion to dismiss, a district court is required to "'accept as true all of the factual allegations contained in the complaint . . . '", Erickson, 551 U.S. at 94 (quoting Twombly, 550 U.S. at 555-556). The court must also "draw[] all reasonable . . . inferences from th[e] facts in the plaintiff's favor . . . ."  Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

6

<u>Discussion</u>

A.

ERISA is a comprehensive statutory scheme that regulates qualifying employee pension and welfare-benefits plans, including those that provide disability insurance.  <u>See generally</u> <u>Metropolitan Life Ins. Co. v. Massachusetts</u>, 471 U.S. 724 (1985).  It provides plan participants the right to bring a civil action to recover benefits due or otherwise enforce the terms of an ERISA plan.  29 U.S.C. § 1132(a)(1)(B).  ERISA does not contain a statute of limitations governing § 1132 benefits actions, but many ERISA plans contain a contractual provision that imposes a deadline on filing legal action which has the same preclusive effect.  <u>See</u> <u>Heimeshoff v. Hartford Life & Acc. Ins. Co.</u>, --- U.S. ---, 134 S. Ct. 604 (2013).

The policy in this case contains such a provision.  It reads, in pertinent part:

TIME LIMITS ON LEGAL ACTIONS

No action at law or in equity may be brought until 60 days after you have given us Proof Of Loss.  No such action may be brought more than three years after the earlier of:

1. The date we receive Proof Of Loss; and
2. The time within which Proof Of Loss is required to be given.

LTD Policy at * 24.  The policy defines Proof of Loss as

"written proof that you are Disabled and entitled to [long term]

benefits."  Id. at * 22.  The policy also contains a time limit

for filing Proof of Loss:

> You must give us Proof of Loss within 90 days after the
> end of the Benefit Waiting Period. If you cannot do so,
> you must give it to us as soon as reasonably possible,
> but not later than one year after that 90-day period. If
> Proof Of Loss is filed outside these time limits, your
> claim will be denied. These limits will not apply while
> you lack legal capacity.

Id. at * 21.  The Benefit Waiting Period is 90 days.  Id. at *

2.

     Citing these provisions, Standard asserts that

Caldwell's Proof of Loss was due no later than July 3, 2011.[4]

See Def. Mem. of Law in Supp. Mot. to Dismiss at * 6 ("Caldwell

alleges that her Loss, i.e. her disability, began January 4,

2011.  The [policy']s Benefit Waiting Period is 90 days.

Caldwell's Proof Of Loss was therefore due July 3, 2011 (90 days

after the 90-day Benefit Waiting Period)")(internal citations to

---

[4]Although it is not expressly stated in the complaint, it appears
that Caldwell submitted the required Proof of Loss on January 4,
2011, as it is agreed by all parties that Caldwell began
receiving LTD benefits on April 5, 2011, which falls 90 days
after the January date.  See e.g., Pl. Brief in Opp'n to Mot. to
Dismiss, Attachment A, "September 23, 2013 Letter from Standard
to Caldwell" (ECF 25-1).  In that case, the contractual
limitation period would have run on January 4, 2014.  The
difference is not material, as Caldwell filed her action after
either expiration date.

the record omitted).  Thus, Standard argues, the three-year contractual limitation period for filing a legal action expired no later than July 3, 2014.  Id.  Given that Caldwell initiated this action nearly two months after that date, on August 29, 2014, Standard asserts that Caldwell's claim is barred by the contractual limitation provision.  Standard reinforces this argument by citing the decision in Heimeshoff, in which the Supreme Court upheld the enforceability of a contractual limitations provision substantially similar to the one at issue here.

Caldwell argues that her action is not time-barred because the contractual limitation period conflicts with, and is therefore rendered unenforceable by, W. Va. Code § 33-6-14. Standard contends that § 33-6-14 is inapposite, arguing that § 33-6-14 is preempted by ERISA, and in the alternative arguing that the policy's contractual limitation provision must be enforceable because its language is mandated by another section of the W. Va. Code, § 33-15-4(k).

Heimeshoff resolved a circuit split concerning the enforceability of contractual limitation provisions, reaffirming the doctrine first established in Order of United Commercial Travelers of America v. Wolfe, 331 U.S. 586 (1947)(contractual limitation provisions generally enforceable but subject to

9

statutory restriction or prohibition), and specifically holding that a contractual limitation provision in an ERISA plan is enforceable even if the window for filing a legal claim closes before the plaintiff has completed the ERISA-mandated[5] internal review process.[6]  Id. at 610.  The Court announced its principal holding by saying:

> Absent a controlling statute to the contrary, a participant and a[n] [ERISA] plan may agree by contract to a particular limitations period, even one that starts to run before the cause of action accrues, as long as the period is reasonable.

Id.

     The Court in Heimeshoff concluded that ERISA itself was not a "controlling statute to the contrary," because it does not contain a relevant statute of limitations or any language that prohibited the parties from "choos[ing] a shorter [limitations] period by contract."  Id. at 611.  The Court then briefly analyzed the contractual limitation at issue – a three year period that began to run when proof of loss was due – and held that it was not unreasonably short.  Id. at 613.

_____

[5]Although the text of ERISA does not require exhaustion, "[t]he courts of appeals have uniformly required that participants exhaust internal review before bringing a claim for judicial review under [ERISA's section providing a private cause of action]."  Heimeshoff, 134 S. Ct. at 610.
[6]Heimeshoff changed the law in this circuit by expressly abrogating White v. Sun Life Assurance Co. of Canada, 488 F.3d 240 (4th Cir. 2007), which espoused a contrary position.

In this case, Caldwell does not challenge the reasonableness of the contractual limitation provision.  Instead she argues that W. Va. Code § 33-6-14 is a "controlling statute to the contrary" that prohibits the parties from agreeing to a limitation, like the one in the policy, that sets the deadline for filing suit less than two years after her cause of action accrued.  W. Va. Code § 33-6-14 reads, in pertinent part:

> No policy delivered or issued for delivery in West Virginia and covering a subject of insurance resident, located, or to be performed in West Virginia, shall contain any condition, stipulation or agreement . . . limiting the time within which an action may be brought to a period of less than two years from the time the cause of action accrues . . . Any such condition, stipulation or agreement shall be void, but such voidance shall not affect the validity of the other provisions of the policy.

W. Va. Code § 33-6-14 (emphasis added).

The limitation period in the policy and the restriction on such provisions contained in § 33-6-14 are not inherently incompatible.  In a vacuum, it is possible for the deadline imposed by the policy (three years after the date proof of loss is due) to fall at least two years after the plaintiff's legal cause of action accrues (which occurs when the plaintiff has received a formal denial of benefits and exhausted any required internal appeal), and thus not run afoul of the statutory restriction.  But under the facts of this case, the statute and the limitation provision are in tension.  If § 33-6-

14 applies, it would be a "controlling statute to the contrary,"
and the policy's limitation provision would be unenforceable.

i.

Nothing in Heimeshoff suggests that a state law cannot
be a "controlling statute to the contrary." Heimeshoff borrows
the "controlling statute to the contrary" language directly from
Wolfe, and courts have, on several occasions, held that the
language in Wolfe encompasses both state and federal statutes.
See e.g., Entous v. Viacom Int'l, Inc., 151 F. Supp. 2d 1150,
1155 (C.D. Cal. 2001)(noting that "Wolfe does not distinguish
between state and federal statutes" and holding that "[the
controlling statute to the contrary doctrine] applies with equal
force whether the applicable limitations period is governed by a
federal statute or a state statute."), MFS Int'l, Inc. v. Int'l
Telcom Ltd., 50 F. Supp. 2d 517, 522 ("A 'controlling statute to
the contrary' must sensibly be understood to mean a federal or
state statute that explicitly proscribes such contractual
limitations."). Had the Heimeshoff court found it appropriate
to exclude state statutes from the universe of potential
"controlling statute[s] to the contrary" in the context of
ERISA, it could have done so with the inclusion of a single word
– federal – to its principal holding, but it did not do so.
Rather, by using the language from Wolfe verbatim, and then

12

citing Louisiana & W.R. Co. v. Gardiner, 273 U.S. 280 (1927),
and Missouri, K. & T.R. Co. v Harriman Bros., 227 U.S. 657
(1913), two cases which either directly involved, or
extrapolated principles from, state statutes of limitation, the
Court seems to have implicitly acknowledged that a state law can
be a "controlling statute to the contrary."  See also Halpern v.
Blue Cross/Blue Shield of W. New York, No. 12-CV-407S, 2014 WL
4385759 (W.D.N.Y. Sept. 4, 2014)(holding a New York state
statute regulating insurance to be a "controlling statute to the
contrary" in a post-Heimeshoff ERISA case.).  Absent the
applicability of other doctrines, neither the language nor
reasoning of Heimeshoff prevents the application of § 33-6-14
simply because it is a state statute.

ii.

Standard argues that § 33-6-14 cannot be a
"controlling statute to the contrary" because it is preempted by
ERISA.  ERISA contains a broad preemption provision that states
"[ERISA] superecede[s] . . .  State laws . . . [that] relate to
any employee benefit plan."  29 U.S.C. § 1144(a).  However,
ERISA also contains a savings clause which "exempts from
preemption 'any law of any State which regulates insurance.'"
UNUM Life Ins. Co. of Am. v. Ward, 526 U.S. 358, 363
(1999)(quoting ERISA's savings clause, 29 U.S.C. §

1144(b)(2)(A)).  In UNUM, the Supreme Court discussed the
breadth of the savings clause and set forth the framework for
determining if a state statute is saved from preemption because
it "regulates insurance."

The UNUM framework has two tiers.  The first tier
asks, "from a common-sense view of the matter," whether or not
the state statute at issue "regulates insurance."  UNUM, 526
U.S. at 367.  There is no question that § 33-6-14 survives this
initial inquiry.  Chapter 33 of the West Virginia Code is titled
and devoted to "Insurance" and contains no fewer than 49
articles that regulate insurers, insurance contracts, and a wide
variety of insurance-related subjects.  W. Va. Code § 33-1-1 et
seq.  Section 33-6-14 is contained in this section of the code
and by its very text applies to "policies . . . covering a
subject of insurance."  W. Va. Code § 33-6-14, quoted in
pertinent part, supra.

The second part of the UNUM framework is a three-
factor test.  This second-tier inquiry examines if the statute
in question: 1) relates to the transferring or spreading of a
policyholder's risk, 2) is an integral part of the policy
relationship between the insurer and the insured, and 3) is
limited to entities within the insurance industry.  UNUM, 526
U.S. at 367.  These three factors are "guideposts, not separate

14

essential elements" and all three need not be present to save a statute from preemption.  Id., at 374.

Applying this framework, one need not look beyond the plain language of § 33-6-14 to establish the second and third factors: the statute has a direct impact on the policy relationship between an insurer and the insured (by establishing a statutory floor for contractual limitations that cannot be subverted by agreement) and it does not have wider application (the statute's scope is unambiguously limited by the use of language such as "a subject of insurance" and "insurer").  In UNUM, the presence of two factors was enough to satisfy the second-tier inquiry, UNUM, 526 U.S. at 374-75, and the same two factors found in UNUM are present here.  Moreover, the UNUM Court stated that, "[w]e have repeatedly held that state laws mandating insurance contract terms are saved from preemption under [ERISA's savings clause]."  Id. at 375; see also FMC Corp. v. Holliday, 498 U.S. 52, 64 (1990)("[I]f a[n] [ERISA] plan is insured, a State may regulate [that plan] indirectly through regulation of [the] insurer and . . . insurance contracts.").  Accordingly, § 33-6-14 avoids preemption by operation of ERISA's savings clause.

B.

Standard raises one additional argument that need be addressed.  W. Va. Code § 33-15-4 reads, in pertinent part:

Required policy provisions:

Except as provided [in circumstances not relevant here], each [insurance] policy delivered or issued for delivery to any person in this state shall contain the provisions specified in this section in the words in which the same appear in this section:

* * *

(k) A provision as follows:

"Legal Actions: No action at law or in equity shall be brought to recover on this policy prior to the expiration of sixty days after written proof of loss has been furnished in accordance with the requirements of this policy. No such action shall be brought after the expiration of three years after the time written proof of loss is required to be furnished."

Standard asserts that the limitation provision contained in the policy is "exactly the three-year time limit on legal actions mandated by the West Virginia Code." Def. Reply at * 13. Standard argues that W. Va. Code § 33-6-14 must be read in concert with § 33-15-4(k) and that because the "[policy] contains precisely the three-year Time Limits established by West Virginia statutes, [the policy] does not run afoul of W.Va. Code § 33-6-14." Id. at * 14.

This argument is unavailing.  Compliance with one

16

statutory section does not prevent the application of a related, but entirely separate, statutory section.  See Morton v. Mancari, 417 U.S. 535, 551 (1974)("when two statutes are capable of co-existence . . . each [is] effective").  Standard attempts to bolster its argument by citing Shumate v. Patterson for the proposition that "statutes should be read in harmony and not in conflict."  943 F.2d 362, 365 (4th Cir. 1991).  While that is a correct canon of statutory construction, it is inapplicable here, because read together there is no irreconcilable tension between § 33-15-4(k) and § 33-6-14.  The timeframe imposed by the required provision from § 33-15-4(k)(which is virtually identical to the limitation contained in the policy) is not automatically voided by the statutory floor provision imposed by § 33-6-14.  It is possible for a deadline set by § 33-15-4(k) to fall more than two years after a plaintiff's legal cause of action accrues, and in such a case, that deadline will be undisturbed by § 33-6-14.  But when, as here, the deadline falls less than two years after a plaintiff's cause of action accrues, § 33-6-14 applies, and nothing in the language of § 33-15-4(k) prohibits such application.

### Conclusion and Order

Having determined that § 33-6-14 is a "controlling statute to the contrary," all that remains is to apply the

statute.  Caldwell's legal cause of action accrued, at the earliest, on September 23, 2013, the date of Standard's letter announcing the denial of her first internal appeal.  Rodriguez v. MEBA Pension Trust, 872 F.2d 69, 72 (4th Cir. 1989)("An ERISA cause of action does not accrue until a claim of benefits has been made and formally denied.").  Section 33-6-14 voids any contractual provision that limits the period in which a plaintiff can bring suit to less than two years from the date the cause of action accrues.  W. Va. Code § 33-6-14.  Thus, in this case, any contractual limitation that prohibits the filing of a civil action before September 23, 2015 is unenforceable.  By every calculation, the limitation period contained in the policy expires well before that date.  Accordingly, the limitations period in the policy is unenforceable, and Caldwell's complaint is not time-barred.[7]

_____

[7] In the absence of a valid contractual provision, the time limit for filing an ERISA benefits action is governed by the limitations period applicable to the most closely related state law claim.  Dameron v. Sinai Hosp. of Baltimore, Inc., 815 F.2d 975, 981 (4th Cir. 1987)("ERISA provides no explicit limitation period for bringing a private cause of action. In such circumstances, the federal courts look to state law for an analogous limitation provision to apply.").  W. Va. Code § 55-2-6, which provides either a five or ten year period for bringing a breach of contract action, is the most closely analogous statute of limitations.  See Gillespie v. CUNA Mut. Grp. Long Term Disability Ins. Policy, No. 2:09-cv-120, 2010 WL 1050286, (S.D.W. Va. Mar. 18, 2010)(Copenhaver, J.)(holding that "West Virginia Code § 55-2-6 is the proper source from which to borrow the statute of limitations under West Virginia law" in an ERISA

For this and all the forgoing reasons, the court denies Standard's motion to dismiss.

The Clerk is requested to transmit this order to all counsel of record and to any unrepresented parties.

DATED:  August 10, 2015

John T. Copenhaver, Jr.
United States District Judge

---

benefits action).  Caldwell's claim is timely under either the five year or ten year period provided by § 55-2-6.